**193-15**

ORIGINAL

<u>Court of Appeals</u>

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

---

# Petition for Discretionary Review

No. 01-13-00969-CR

FILED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

Luciano Vargas Padilla - Appellant

V.

The State of Texas - Appellee

Appeal from the 149th District Court of Brazoria County
(Trial Court No. 69079)

Judgement Rendered February 3, 2015

Pg 1

# PARTIES TO THE CASE

APPELLANT:       LUCIANO VARGAS PADILLA

ATTORNEY FOR APPELLANT AT TRIAL:
NAME: DOMINIQUE GERARD
ADDRESS: 613 MULBERRY ST.
         ANGELTON, TX 77515


ATTORNEY FOR APPELLANT ON APPEAL:
NAME: JOSEPH KYLE VERRET
ADDRESS: 1200 BROADWAY, STE. 274B
         PEARLAND, TX. 77584


APPELLEE:       THE STATE OF TEXAS

ATTORNEY FOR THE STATE AT TRIAL:
NAME: BRIAN HRACH
ADDRESS: 111 E. LOCUST, SUITE 408A
         ANGELTON, TX 77515
         BRAZORIA COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
         BRAZORIA COUNTY COURTHOUSE
         (979) 864-1230
         (979) 864-1525 (FAX)

ATTORNEY FOR STATE ON APPEAL:
NAME: DAVID BOSSERMAN - ASSISTANT CRIMINAL DISTRICT ATTORNEY
ADDRESS: 111 E. LOCUST, STE. 408-A
         ANGELTON, TX. 77515
         BRAZORIA COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
         BRAZORIA COUNTY COURTHOUSE.
         (979) 864-1230
         (979) 864-1525 (FAX)

PG2

COURT OF CRIMINAL APPEALS JUDGEMENT PANEL:

NAMES:

JUSTICE REYES

JUSTICE HIGLEY

JUSTICE BROWN

OPINION DELIVERED BY JUSTICE HIGLEY

GROUND ONE FOR ARGUMENT:
NO EVIDENCE WAS SUBMITTED TO SHOW APPLICANT WANTED TO PURCHASE NARCOTICS MAILING INFORMATION FROM CI. HEARSAY.

GROUND TWO FOR ARGUMENT:
STATE FAILED TO PROVE THAT THE ACCUSED EXERCISED ACTUAL CARE, CONTROL, AND MANAGEMENT OVER THE CONTRABAND, AND SECOND FAILED TO PROVE THE CRUCIAL ELEMENT THAT THE ACCUSED HAD KNOWLEDGE OF THE THING POSSESSED.

GROUND THREE FOR ARGUMENT:
INEFFECTIVE ASSISTANCE OF COUNSEL

PG 3

# LIST OF AUTHORITIES

## CASES

Cude v. State 716 S.W. 2d 46,47 (Tex. Crim. App. 1986)

Dees v. State 722 S.W. 2d 209, 214-15 (Tex. App. - Corpus Christi 1986)

Herndon v. State 787 S.W. 2d 408-40a-10 (Tex. Cr. App. 1990)

Herrera v. State 561 S.W. 2d 175, 179 (Tex. Cr. App. 1978)

Illinois v. Gates 462 U.S. at 230, 103 S. Ct. at 2328)

Lassaint v. State 79 S.W. 3d 736, 740 (Tex. App. Corpus Christi 1997 No Pet.)

Martin v. State 753 S.W. 2d 384, 387 (Tex. Cr. App. 1988)

Menchaca v. State 901 S.W. 2d 640, 651 (Tex. App. Corpus Christi 2002 No Pet.)

Oaks v. State 642 S.W. 2d 174, 177 (Tex. Cr. App. 1982)

Sandoval v. State 946 S.W. 2d 472, 476 (Tex. App. Corpus Christi 1997 No Pet)

Strickland v. Washington 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052)

# STATEMENT OF THE CASE

APPELLANT WAS INDICTED FOR THE OFFENSE OF ILLEGAL BARTER, EXPIDENTURE, OR INVESTMENT. THE CASE WAS TRIED BEFORE A JURY WHICH FOUND HIM GUILTY. ON AUGUST 29, 2013. THE TRIAL COURT ASSESSED PUNISHMENT AT 10 (TEN) YEARS IMPRISONMENT. APPELLANT APPEALED TO THE COURT OF CRIMINAL APPEALS, WHICH RENDERED A JUDGEMENT ON FEBRUARY 3, 2015, APPEAL NO. 01-13-00969 IN THE 14th COURT OF APPEALS OF HOUSTON, TX.

NO MOTION FOR REHEARING WAS FILED.

ORAL ARGUMENT REQUESTED:

ORAL ARGUMENT IS REQUESTED DUE TO CONTRADICTING STATEMENTS MADE AGAINST APPELLANT. APPELLANT ASKS THE COURT OF APPEALS FOR AN ORAL ARGUMENT SO THAT THE FACTS CAN BE HEARD AND ARGUED ORALLY. THERE'S NO EVIDENCE THAT APPELLANT EVER TALKED TO CI TO PURCHASE NARCOTICS. THE RECORD SHOWS THAT CASE IS MERE HEARSAY. THE APPELLANT NEVER EXERCISED ACTUAL CARE OR CONTROL, AND APPELLANT NEVER SHOWED OR EXERCISED THE DOMINION OVER THE THING POSSESSED. RECORD INDICATES THAT APPELLANT'S PRESENCE ALONE RENDERED HIS CONVICTION, BUT THE PRESENCE OF CO-DEFENDANT BERNABE WAS ALSO A FACTOR BUT WAS EXONERATED. APPELLANT PRAYS THAT ORAL ARGUMENT BE HEARD TO DICUSS SUCH CRUCIAL ARGUMENTS TO THIS CASE.

# PRAYER FOR RELIEF

IN CONCLUSION APPELLANT PRAYS THAT THE PROPER RELIEF SHOULD BE GRANTED, PROPER JUDGEMENT VACATED, AND A PROPER JUDGEMENT RENDERED. DUE TO EVIDENCE BEING SO UNDULY PRE-JUDICIAL THAT IT RENDERS TRIAL FUNDAMENTALLY UNFAIR. DUE PROCESS PROVIDES MECHANISM FOR RELIEF. WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.

DATE 03/24/15 _____          X Luciano Vargas Padilla _____

PG 6

# COURT OF CRIMINAL APPEALS OF TEXAS
## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

## INSTRUCTIONS

1. You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2. The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3. You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4. You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5. Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6. You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7. Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8. You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9. When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

Case No. _____
(The Clerk of the convicting court will fill this line in.)

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

APPLICATION FOR A WRIT OF HABEAS CORPUS
SEEKING RELIEF FROM FINAL FELONY CONVICTION
UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Luciano Vargas Padilla

DATE OF BIRTH: _____

PLACE OF CONFINEMENT: TDCJ - Larry Gist Unit

TDCJ-CID NUMBER: 1892209 _____ SID NUMBER: _____

(1)     This application concerns (check all that apply):

        ☐       a conviction                    ☐       parole

        ☐       a sentence                      ☐       mandatory supervision

        ☐       time credit                     ☑       out-of-time appeal or petition for
                                                        discretionary review

(2)     What district court entered the judgment of the conviction you want relief from?
        (Include the court number and county.)

        Court of Appeals - First District of Texas Appeal From The 149th.
        District Court of Brazoria County

(3)     What was the case number in the trial court?

        Trial Court - No. 69079     Appeals Court # - No: 01-13-00969-CR

(4)     What was the name of the trial judge?

        Trial Judge -                      Appeals Judge, Laura Carter Higley, Justice

Revised: January 1, 2014                1

(5)    **Were you represented by counsel? If yes, provide the attorney's name:**

J. KYLE VERNET

(6)    **What was the date that the judgment was entered?**

FEBRUARY 3, 2015

(7)    **For what offense were you convicted and what was the sentence?**

ILLEGAL INVESTMENT IN COCAINE ( 10 YEARS TDCJ)

(8)    **If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?**

N/a

(9)    **What was the plea you entered?** (Check one.)

☐ guilty-open plea    ☐ guilty-plea bargain
☑ not guilty    ☐ *nolo contendere*/no contest

**If you entered different pleas to counts in a multi-count indictment, please explain:**

(10)   **What kind of trial did you have?**

☐ no jury    ☐ jury for guilt and punishment

2

☑ jury for guilt, judge for punishment

(11) Did you testify at trial? If yes, at what phase of the trial did you testify?

_____

(12) Did you appeal from the judgment of conviction?

☑ yes          ☐ no

If you did appeal, answer the following questions:

(A) What court of appeals did you appeal to? FIRST DISTRICT COURT OF APPEALS- Houston,TX

(B) What was the case number? 01-13-00969-CR

(C) Were you represented by counsel on appeal? If yes, provide the attorney's name:

JOESPH KYLE VERNET

(D) What was the decision and the date of the decision? TRIAL COURT DECISION ON 2/3/15 AFFIRM THE JUDGEMENT OF THE

(13) Did you file a petition for discretionary review in the Court of Criminal Appeals? THIS IS MY PETITION FOR DISCRETIONARY REVIEW.

☐ yes          ☐ no          N/A

If you did file a petition for discretionary review, answer the following questions:

(A) What was the case number? N/A

(B) What was the decision and the date of the decision? N/A

(14) Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes          N/A          ☐ no

If you answered yes, answer the following questions:

(A) What was the Court of Criminal Appeals' writ number? N/A

3

**(B)** What was the decision and the date of the decision? _____ N|A _____

**(C)** Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____ N|A _____

_____

_____

_____

**(15)** Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes  ☑ no

If you answered yes, please provide the name of the court and the case number:

_____ N|A _____

**(16)** If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes  ☐ no  N/A

If you answered yes, answer the following questions:

**(A)** What date did you present the claim? N/A _____

**(B)** Did you receive a decision and, if yes, what was the date of the decision?

_____ N|A _____

If you answered no, please explain why you have not submitted your claim:

4



N/A

(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

**GROUND ONE:** PETITIONER ASSERTS TRIAL COURT ABUSED IT'S DISCRETION BY DENYING HIS MOTION TO SUPPRESS. (2) PETITIONER ASSERTS HE SUFFERED EGRECIOUS HARM DUE TO THE TRIAL COURT'S FAILURE TO INCLUDE A JURY INSTRUCTION CONCERNING EVIDENCE CORROBORATING A CONFIDENTIAL INFORMANTS TESTIMONY. (3) THERE WAS INSUFFICIENT EVIDENCE TO CORROBORATE THE CONFIDENTIAL INFORMANT'S TESTIMONY. AND (4) INEFFECTIVE ASSISTANCE OF COUNSEL.

**FACTS SUPPORTING GROUND ONE:**

ON PG 2 OF THE RESPONSE FROM THE COURT OF CRIMINAL APPEALS INDICATES THAT OFFICERS DID NOT STOP THE CAR BASED ON A TRAFFIC VIOLATION, BUT BASED ON INFORMATION OF A CONFIDENTIAL INFORMANT THAT THE MEN WERE TRYING TO PURCHASE NARCOTICS FROM THE C.I.. RECORD INDICATES THAT PROBABLE CAUSE EXISTED TO ARREST APPELLANT, AND TWO OTHERS BEFORE MAKING THE TRAFFIC STOP, DUE TO REASONABLE SUSPICION THAT A PERSON IS VIOLATING THE THE LAW. RECORD ALSO INDICATES THAT SUSPICION EXIST IF THE OFFICER HAS SPECIFIC, ARTICULABLE FACTS THAT, WHEN COMBINED WITH RATIONAL INFERENCES FROM THOSE FACTS, WOULD LEAD HIM TO CONCLUDE THAT A PARTICULAR PERSON ACTUALLY IS, HAS BEEN, OR SOON WILL BE ENGAGED IN CRIMINAL ACTIVITY. THE APPELLANT ARGUES THAT INFORMATION FROM THE C.I., THAT APPELLANT WANTED TO PURCHASE A KILO OF COCAINE WAS NOT CREDIBLE AND MERE HEARSAY, NO EVIDENCE SHOW THAT SUCH ALLEGATIONS EXIST OTHER THAN C.I. SAYING THAT RENTERIA SAID SOMEONE NAMED CHANO WANTED TO PURCHASE A KILO OF COCAINE. THE RECORD INDICATES NO EVIDENCE WAS SUBMITTED SUCH AS AUDIO, VIDEO, OR PHONE CONVERSATION WITH APPLICANT TO SHOW THAT HE WANTED TO PURCHASE ANYTHING, THEREFORE MAKES INFORMATION FROM C.I. HEARSAY, IN WHERE THE RELIABILITY AND AND CREDIBILITY ARE HIGHLY RELEVANT FACTORS. THE INFORMANT'S RELIABILITY OR BASIS OF KNOWLEDGE IS RELEVENT IN DETERMINING HIS ASSERTIONS (ILLINOIS V. GATES 462 U.S. AT 230, 103 S. CT. AT 2328). THE RECORD DID NOT INDICATE NO INFORMATION REGARDING THE RELIABILITY OF THE INFORMANT AND INDICATED NO PERSONAL CONVERSATIONS BETWEEN APPLICANT AND THE AFFIANT'S AGENT (DEES V. STATE 722 S.W. 2D 209, 214-15 (TEX. APP.-CORPUS CHRISTI NO PET. 1986)). THERE IS NO PROOF THAT APPLICANT WANTED TO PURCHASE NARCOTICS, NO ONE-ON-ONE OR RECORDED CONVERSATIONS WITH APPELLANT, JUST HEARSAY THAT PURCHASE WAS FOR APPELLANT WHEN RECORD REFLECTS THAT RENTERIA WAS ON ALL RECORDED CONVERSATIONS. THERE ARE NO FACTS THAT A CRIME INVOLVED APPELLANT WHICH MADE HIS DETENTION AND ARREST ILLEGAL. HOW CAN APPELLANT BE CHARGED IF HE NEVER

6

The state failed to prove or meet its burden. First the state failed to prove the accused exercised actual care, control, or management over the contraband, and second failed to prove the conscia element that the accused had knowledge of the contraband. (Martin v. State 753 S.W. 2d 384, 387 (Tex. Cr. App. 1988)). (Herrera v. State 561 S.W. 2d 175, 179 (Tex. Cr. App. 1978). The mere presence of the accused at a place where contraband is located, does not make him a party to joint possession, even if he knows of the contrabands existence. (Davis v. State 642 S.W. 2d 174, 177 (Tex. Cr. App. 1982). Possession means more than being where the action is; it involves the exercise or dominion and control over the thing allegedly possessed. (See Id). When an accused is not in exclusive possession and control of the place where the contraband is found, it cannot be concluded that he had knowledge or control over the contraband unless there are additional independant facts or circumstances to affirmatively link him to the contraband. (Herndon v. State 787 S.W. 2d 408, 409-10 (Tex. Cr. App. 1990)). (Cude v. State 716 S.W. 2d 46, 47 (Tex. Cr. App. 1986)). (Sandoval v. State, 946 S.W. 2d 472, 476, (Tex. App. Corpus Christi 1997, no pet.)). Similarily when the contraband is not found on the accused's person or is not in exclusive possession of the accused, additional facts and circumstances must link the accused to the contraband. (Lassaint v. State, 79 S.W. 3d 736, 740 (Tex. App. Corpus Christi 2002, no pet.)). See also (Menchaca v. State 901 S.W. 2d 640, 651, (Tex. App. El Paso pet ref'd)).

Pg. 2 (Exhibit B) the police report shows that Bernabe opened the glove box compartment in the Honda car that belonged to Bernabe, and told applicant to show the money and applicant showed the money. And then on Pg. 4 of the response of the court of criminal appeals record reflects that after they had eaten they went to the car. At the car Bernabe told appellant to hand the money to Renteria, appellant did and Renteria showed the money to the informant. These are contradicting statement. Police report reflects Sgt. Brawner saying that appellant showed C.I. the money, and on (pg. 4) of the response it shows that Renteria showed the C.I. the money. These contradicting statements seem fabricated in order to make appellant seem guilty, when all the while Bernabe was the one who told appellant there was money in the glove compartment. Bernabe. Based on both records, (pg. 2 police report) told appellant to show the money, and on pg. 2 exhibit B he told the appellant to give the money to Renteria; and Renteria showed the money. If in fact, if appellant was sole purchaser, wouldn't appellant know money was in the glove box, and if in fact if the appellant was the person committing the crime of wanting to purchase cocaine, appellant would of gotten the money himself. Bernabe opened the glove box and told appellant to grab the money, that shows Bernabe had knowledge of the money

THE MONEY HE HAD IN THE GLOVE BOX, AND THE KNOWLEDGE OF THIS MONEY HE WANTED SHOWN TO THE C.I. SHOWS THAT HE EXERCISED ACTUAL CONTROL AND DOMINION. BERNABE BEING IN CONTROL, KNOWING THE MONEY WAS IN THE GLOVE COMPARTMENT, PULLED OPEN THE GLOVE BOX TELLING BETWEEN TWO PEOPLE TO SHOW THE MONEY TO THE CI. HIM BEING THE INITIATOR DOES IT NOT RAISE QUESTION, AND HIM BEING THE INITIATOR HOW COULD HE BE EXONERATED OF ALL CHARGES WHEN IN FACT THE RECORD CLEARLY SHOWS HIS GUILT. WHAT DEFENSE WAS USED THAT HE GOT EXONERATED AND EVERYBODY ELSE CHARGED. DUE TO CONTRADICTING STATEMENTS THAT APPELLANT SHOWED THE C.I. THE MONEY, OR THAT BERNABE TOLD APPELLANT TO GIVE RENTERIA THE MONEY TO SHOW THE CI., THIS CLEARLY SHOWS THAT THE MONEY BELONGED TO BERNABE, AND WITH THESE CONTRADICTING STATEMENTS, EVEN THOUGH THE MONEY WAS FOUND UNDER THE PASSENGER SEAT, BEYOND A REASONABLE DOUBT, THE MONEY COULD OF IN FACT HAD BEEN PUT UNDER THE SEAT BY RENTERIA. (PG. 4) OF THE RESPONSE OF THE CRIMINAL APPEALS, INFORMANT CLAIMS THAT DURING A CONVERSATION, APPELLANT SAID "I WENT TO PICK UP MATERIAL". SGT. BRAWNER THEN TESTIFIED THAT IT WAS COMMON FOR PEOPLE IN THE NARCOTICS TRAFFICKING TRADE TO SPEAK IN CODE, USING WORDS LIKE "MATERIAL". THE STATEMENT I WENT EARLY TO PICK UP MATERIAL IS MOOT, BECAUSE THE STATEMENT IS BROAD AND HAD NOTHING TO DO WITH THE SITUATION AT HAND. I WENT EARLY TO PICK UP THE MATERIAL COULD MEAN ANYTHING, EVEN JUST EXACTLY WHAT THE STATEMENT IS. NO NARCOTICS WERE INVOLVED IN THIS CASE FOR APPELLANT TO BE SAID TO BE PART OF ANY NARCOTICS TRAFFICKING. PICKING UP MATERIAL BEYOND A REASONABLE DOUBT, COULD MEAN HE PICKED UP MATERIAL EARLY. (EXHIBIT C) SHOWS ACTUAL PROOF OF APPELLANT PICKING UP MATERIAL THE SAME MORNING FOR A JOB HE WAS DOING. ON PG 15 AND 16 OF THE RESPONSE FROM THE COURT OF CRIMINAL APPEALS INDICATES THAT APPELLANTS PRESENCE TENDS TO CONNECT APPELLANT TO CRIME, HOW CAN IT BE THAT BERNABE, CLEARLY INVOLVED AND PRESENT, NOT TEND TO CONNECT HIM TO THE CRIME? HOW CAN IT BE THAT BERNABE BEING THE INITIATOR OF INTENTIONALLY AND KNOWINGLY PULLING THE MONEY OUT OF THE GLOVE BOX IN HIS CAR, AND TELLING WHOEVER HE SUPPOSEDLY TOLD TO SHOW THE C.I. THE MONEY, HOW IS IT HE WAS EXONERATED? PETITIONER THEREFORE ASSERTS HE HAS SUFFERED HARM DUE TO INSUFFICIENT EVIDENCE, AND CONTENDS THE APPELLATE COURT IS TOTALLY WRONG IN JUDGEMENT AND DECISION. DUE TO INEFFECTIVE ASSISTANCE TO COUNSEL NONE OF THESE ISSUES WERE BROUGHT UP, TRIAL COUNSEL REFUSED TO PUT RENTERIA ON THE STAND TO ALLOW RENTERIA TO TELL THE JURY THAT APPELLANT HAD NOTHING TO DO WITH THE CRIME, AND DUE TO DUE DILIGENCE OF COUNSEL, APPLICANT SUFFERED HARM. AND DUE TO COUNSELS ERRORS THE OUTCOME OF THE CASE COULD OF BEEN DIFFERENT. (STRICKLAND V. WASHINGTON 466 U.S. 668, 80 L.ED. 2d 674, 104 S. CT. 2052).

9

**GROUND THREE:**

_____

_____

**FACTS SUPPORTING GROUND THREE:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Rev. 01/14/14

**GROUND FOUR:**

_____

_____

**FACTS SUPPORTING GROUND FOUR:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12

Rev. 01/14/14

Rev. 01/14/14

GROUND:

_____

_____

FACTS SUPPORTING GROUND:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

14

Rev. 01/14/14

## WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.

### VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _____

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20_____.

_____
Signature of Notary Public

16

## PETITIONER'S INFORMATION

Petitioner's printed name: _____

State bar number, if applicable: _____

Address: _____

_____

_____

Telephone: _____

Fax: _____

## INMATE'S DECLARATION

I, _Luciano Vargas Padilla_____, am the applicant / petitioner (circle one) and being presently incarcerated in _Tdcj | Larry gist_____, declare under penalty of perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _March 24____, 20 _15_.

_Luciano Vargas Padilla_____
Signature of Applicant / Petitioner (circle one)

17

## PETITIONER'S INFORMATION

Petitioner's printed name: Luciano Vargas Padilla

Address: 3295 fm 3514   Larry Gist

Beaumont, tx   77705

Telephone: N/A

Fax: N/A

Signed on _____, 20____.

Luciano Vargas Padilla
Signature of Petitioner

18

Rev. 01/14/14



# JUDGMENT

# Court of Appeals

# First District of Texas

NO. 01-13-00969-CR

LUCIANO VARGAS PADILLA, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 149th District Court of Brazoria County.  (Tr. Ct. No. 69079).

This case is an appeal from the final judgment signed by the trial court on November 1, 2013.  After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error.  Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered February 3, 2015.

Panel consists of Justices Keyes, Higley, and Brown. Opinion delivered by Justice Higley.

PG 9

Opinion issued February 3, 2015



In The

# Court of Appeals

For The

## First District of Texas

_____

NO. 01-13-00969-CR
_____

**LUCIANO VARGAS PADILLA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 69079**

---

## OPINION

Appellant, Luciano Vargas Padilla, was charged by indictment with illegal investment in cocaine.[1]  Appellant pleaded not guilty.  The jury found him guilty, and the trial court sentenced him to 10 years' confinement.  In three issues,

---

[1]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.126(a)(3), .102(3)(D), .115(a), (f) (Vernon 2010).

Appellant argues (1) the trial court abused its discretion by denying his motion to suppress, (2) he suffered egregious harm due to the trial court's failure to include a jury instruction concerning evidence corroborating a confidential informant's testimony, and (3) there was insufficient evidence to corroborate the confidential informant's testimony.

We affirm.

## Background

On September 13, 2012, Fernando Renteria spotted a man in a store whom he believed to be a drug dealer. He approached the man, who confirmed being a drug dealer. Renteria informed him that he knew someone nicknamed "Chano," who was interested in buying a kilogram of cocaine. Renteria asked the man to wait to meet Chano. The man agreed.

Unknown to Renteria, the man he was speaking with worked on occasion as a confidential informant with the Brazoria County Sheriff's Office. The informant would, as he did with Renteria, identify himself to others as a drug dealer and agree to sell drugs to people seeking to buy some. Sergeant J. Brawner, of the Brazoria County Sheriff's Office, testified at trial that he had worked with the confidential informant many times before. Sergeant Brawner testified that the confidential informant's information had proven reliable in the past.

2

The informant waited at the store. Eventually, Appellant and Carlos Bernabe arrived at the store. Appellant introduced himself to the informant as Chano and began negotiating a price for a kilogram of cocaine. Appellant told the informant that, if he was satisfied with the quality of the cocaine, he would buy larger amounts in the future. Appellant and the informant agreed on a price and planned to meet again the next day to exchange the drugs. HEARSAY

The next morning, the informant contacted Sergeant Brawner and told him about the requested drug sale. The informant met with Sergeant Brawner. He then called Renteria to confirm the plans to meet later that morning. The conversation was recorded and later translated from Spanish to English. The informant translated the conversation to Sergeant Brawner at the time.

Sergeant Brawner and the informant planned that the informant would ask to see the money at the meeting location. The informant would wear a device to record the conversation he had with the others. If the others showed him that they had the money, the informant would drive to a location where the drugs were claimed to be stored with the others following him. If the informant saw the money at the meeting, he would give a signal to Sergeant Brawner. Then Sergeant Brawner would have a uniformed officer pull the car over while they were driving.

Sergeant Brawner searched the confidential informant and his vehicle to make sure he did not have any contraband or large sums of money on him. The

3

informant then drove to the gas station where he planned to meet Appellant, Renteria, and Bernabe. During the drive, he received a call from Renteria telling him that a police patrol car was parked at the gas station. They planned to meet at a nearby Burger King instead. The informant informed Sergeant Brawner of the change of location.

The informant drove to the Burger King. He met Appellant, Renteria, and Bernabe and they went inside. During their conversation, Appellant told the informant, "I went early to pick up the material." At trial, Sergeant Brawner testified that it was common for people in the narcotics trafficking trade to speak in code, using words like "material."

After they had eaten, the informant followed Appellant, Renteria, and Bernabe to their car. At the car, Bernabe opened the glovebox, where the money was stored. Bernabe told Appellant to hand the money to Renteria. Appellant did, and Renteria showed the money to the informant. While walking back to his truck, the informant gave the signal indicating he had seen the money. The informant then drove away with Appellant, Renteria, and Bernabe following him.

After Appellant, Renteria, and Bernabe left the Burger King, Sergeant Brawner directed a uniformed officer to stop their car. The stop was not based on any traffic violation and was warrantless. The officer stopped the vehicle and instructed Appellant, Renteria, and Bernabe to get out of the vehicle. After

4

searching the vehicle, the money that had been shown to the informant was found under Appellant's seat.

## Motion to Suppress

In his first issue, Appellant argues the trial court abused its discretion by denying his motion to suppress. Appellant asserts that the officers lacked proper authority to detain him and to arrest him.

### A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Where, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v.*

*State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact findings and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

## B.     Analysis

After Appellant, Renteria, and Bernabe left the Burger King, Sergeant Brawner directed Investigator West to stop their car. The stop was not based on any traffic violation and was warrantless. Appellant asserts that the officers lacked proper authority to detain him and to arrest him. The relief that Appellant sought in his motion was the suppression of the money found in the search of the car in which he was riding.

To demonstrate standing to challenge the search of another person's vehicle, the defendant must show that he personally has a legitimate expectation of privacy in the searched vehicle. *State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996). "A passenger in a vehicle does not have a legitimate expectation of privacy in a vehicle where he fails to assert a possessory interest in the vehicle or the property seized." *Trinh v. State*, 974 S.W.2d 872, 874 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing *Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985)).

Appellant has claimed no possessory interest in the car in which he was riding or in the money seized. Accordingly, he acknowledges that there is no general expectation of privacy for him to assert. Nevertheless, as Appellant points out, "a mere passenger can challenge the search of the automobile in which he is riding *if* the search resulted from an infringement (such as an illegal detention) of the *passenger's* Fourth Amendment rights." *Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984). It is not enough to show that the passenger's rights were violated. *Id.* Instead, the passenger must show that the evidence was obtained by "exploitation of that illegality" against the passenger's rights. *Id.*

One of Appellant's grounds for his motion to suppress was that he was illegally detained. If this is correct, then the evidence obtained as a result of that illegal detention must be suppressed. *See id.*; *Trinh*, 974 S.W.2d at 874. Accordingly, we review the evidence presented at the hearing on the motion to suppress to determine whether the money found from searching the car was obtained by exploitation of an illegal detention of Appellant. *See Lewis*, 664 S.W.2d at 348.

Appellant argues that "[t]he sole reason for the stop was the belief" that probable cause existed "to arrest the occupants of the vehicle for the felony offense of illegal barter, expenditure, or investment." Appellant reasons that "[i]f there

7

was not probable cause to arrest the men, then the stop of the vehicle for the purpose of arresting them" constituted an illegal detention.

It is true that the officers did not stop the car based on a traffic violation. Instead, they stopped the car based on information that the men were trying to purchase cocaine from the confidential informant. This does not mean that the officers were required to have probable cause to arrest Appellant and the other two men before conducting the stop. Instead, an officer can conduct an investigative detention if the officer has a *reasonable suspicion* that a person is violating the law. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). "[P]assengers in an automobile are subject to temporary investigative detentions in the same manner as pedestrians." *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

"In situations involving the police's use of an informant, we consider the informant's reliability in analyzing the totality of the circumstances." *Smith v.*

8

*State*, 58 S.W.3d 784, 789 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability." *Id.* at 790. In this regard, "the informant's veracity, reliability, and basis of knowledge are highly relevant." *State v. Sailo*, 910 S.W.2d 184, 188–89 (Tex. App.—Fort Worth 1995, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328 (1983)).

Sergeant Brawner testified at the hearing on the motion to suppress. A confidential informant had contacted Sergeant Brawner, telling him that someone had offered to buy cocaine from him. Sergeant Brawner had worked with the confidential informant many times before. He testified that the confidential informant's information had proven reliable in the past.

The confidential informant provided Sergeant Brawner with information about the informant's first meeting with Appellant and Renteria. Renteria was looking for someone to sell cocaine to Appellant. Appellant was interested in buying one kilogram of cocaine.

Based on this information, Sergeant Brawner and the confidential informant agreed to set up a staged transaction. In the presence of Sergeant Brawner, the confidential informant called Renteria to set the time and location of the

transaction. The conversation was in Spanish. The confidential informant translated the conversation for Sergeant Brawner.

The confidential informant agreed to meet Renteria and the others at a gas station in Manvel, Texas. Sergeant Brawner searched the confidential informant and his vehicle to make sure he did not have any contraband or large sums of money on him. He then equipped the confidential informant with an audio recording device to record the conversation. Sergeant Brawner and the confidential informant planned a signal for the confidential informant to give if he saw the money.

The confidential informant drove to the meeting location. On his way there, the informant talked to Renteria on his cell phone. Renteria told the informant that a police patrol car was in the parking lot. They agreed to meet at a nearby Burger King. The informant notified Sergeant Brawner of the change in location.

At the Burger King, the confidential informant went inside with Renteria, Appellant, and Bernabe. Some time later, they came out and walked to Renteria, Appellant, and Bernabe's car. After they talked, the confidential informant walked to his truck. While walking to his truck, the confidential informant gave the signal that he had seen the money. The confidential informant drove away, leading Appellant, Renteria, and Bernabe to the location where the drugs were purported to

be held. During the drive, Sergeant Brawner instructed Investigator West to stop the car in which Appellant was riding.

The confidential informant had been used before by Sergeant Brawner and had provided reliable information in the past. The informant called Renteria with Sergeant Brawner present. In that conversation, the informant and Renteria scheduled a time and place to meet. After the meeting, the informant signaled that he had seen the money intended to buy cocaine. We hold this evidence along with the reasonable inferences to be drawn from it is sufficient to create a reasonable suspicion that Appellant and the other occupants of the vehicle were violating the law. *See Sailo*, 910 S.W.2d at 188–89 (holding informant's veracity, reliability, and basis of knowledge are highly relevant to inquiry).

Appellant argues that the informant was not reliable because some staged drug buys he had participated in before did not lead to arrests and because he did not meet the informant at the originally planned location. Sergeant Brawner testified that it is common for drug buys not to be completed because the other person never brings the drugs or the money. He explained that this does not mean that the informant was wrong or gave bad information. The trial court was entitled to credit this testimony. *See Maxwell*, 73 S.W.3d at 281 (holding trial court is sole and exclusive judge of witnesses' credibility). Similarly, it was the trial court's province to weigh the significance that the meeting place changed due to a police

patrol car being at the original planned location. *See Matthews*, 431 S.W.3d at 603 (holding reasonable suspicion is based on totality of circumstances).

Appellant's other ground for suppressing the evidence was that he was illegally arrested. In *Lewis*, the defendant sought to suppress evidence found in a car in which he was riding based on the claim that his detention lasted too long and, as a result, became illegal. 664 S.W.2d at 349. The court, assuming that the detention became illegal, rejected the claim that the evidence was obtained by the exploitation of the continued detention. The defendant had been removed from the car before the search took place. *Id.* at 348–49. "Once the initial legal detention became an illegal one, the [defendant]'s presence was irrelevant to the officer's decision to search. . . . Thus, in no way was *her* detention necessary to perform the search." *Id.* at 349.

The same reasoning applies here for Appellant's claim that his arrest was illegal. Even assuming Appellant's arrest was illegal, the search was conducted and the money was found before Appellant's arrest. Accordingly, the money could not have been obtained by exploitation of Appellant's arrest. Furthermore, even if we assume Appellant's detention turned into an arrest before the search, there is nothing connecting Appellant's detention or arrest to the officers' search of the car. Because the two are unrelated, Appellant's detention and arrest cannot be a basis for suppressing the evidence. *See id.*

12

We overrule Appellant's first issue.

## Corroboration of Confidential Informant Testimony

In his third issue, Appellant argues there was insufficient evidence to corroborate the confidential informant's testimony.

**A.    Standard of Review & Applicable Law**

Article 38.141 of the Code of Criminal Procedure provides,

> A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a) (Vernon 2005). The corroboration requirement is similar to the corroboration required of an accomplice witness, and the same standard of review applies for each. *Malone v. State*, 253 S.W.3d 253, 257–58 (Tex. Crim. App. 2008).

To measure the sufficiency of the corroborating evidence, we eliminate the accomplice evidence from the record and determine whether the remaining inculpatory evidence tends to connect the defendant to the offense. *Id.* at 257. In applying this standard, we view the evidence in the light that most favors the jury's verdict. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). We consider the combined weight of the non-informant evidence, even if that evidence

13

is entirely circumstantial. *See Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Corroborating evidence that shows only that the offense was committed is not sufficient. CRIM. PROC. art. 38.141(b); *Malone*, 253 S.W.3d at 257. Yet, the corroborating evidence does not need to be sufficient by itself to establish that the accused is guilty beyond a reasonable doubt. *Smith v. State*, 392 S.W.3d 190, 195 (Tex. App.—San Antonio 2012, pet. ref'd).

Likewise, the corroborating evidence need not directly link the accused to the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). Circumstances that appear insignificant may constitute sufficient evidence of corroboration. *Malone*, 253 S.W.3d at 253, 257. Though "mere presence" is insufficient corroboration, evidence that the accused was at or near the scene when or about when it was committed may sufficiently tend to connect the accused to the crime, provided the evidence is "coupled with other suspicious circumstances." *Id.* at 257.

Because each case must rest on its own facts, corroboration does not require a set quantum of proof. *Id.* The single requirement is that "some" non-informant evidence, on which rational jurors could properly rely, tends to connect the accused to the commission of the offense. *Id.* at 257–58.

**B.    Analysis**

Appellant acknowledged at trial that he was present with Renteria and Bernabe during the meeting at Burger King. He went into the Burger King with Renteria, Bernabe, and the confidential informant. Appellant admitted that his voice was on the recording taken inside the Burger King.[2] Appellant acknowledged that he was the person that said, "I went early to pick up the material." Sergeant Brawner testified that it was common for people in the narcotics trafficking trade to speak in code, using words like "material." *See Malone*, 253 S.W.3d at 259 (considering statements "put it together" and "cooked to customer satisfaction" as part of corroborating evidence).

After they left the Burger King, the informant followed Appellant, Renteria, and Bernabe to their car. Appellant admitted that, at the car, he took the bundle of money out of the glove box and gave it to Renteria, who then showed it to the informant. The bundle was wrapped in plastic and taped. It totaled $28,500 in cash, nearly the entire amount they were going to pay for cocaine. After Appellant was stopped, the money was found beneath Appellant's seat.

---

[2]    Appellant admitted that his voice was on the recording, but he denied that the recording was from inside the Burger King. Instead, he claimed it was a recording of a telephone conversation. Viewing the record in the light most favorable to the verdict, we must conclude that the recording took place inside the Burger King. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008) (holding record is viewed in light most favorable to verdict).

The evidence shows then, that Appellant was present during the meeting with the informant. Appellant referred to "material" during a conversation with the informant. He handled the money so it could be shown to the informant. And the money was under his seat after he was stopped. We hold that suspicious circumstances concerning Appellant's presence tends to connect Appellant to the crime. *See id.* at 257. We overrule Appellant's third issue.

### Jury Instruction on Confidential Informant

In his second issue, Appellant argues he suffered egregious harm due to the trial court's failure to include a jury instruction concerning evidence corroborating a confidential informant's testimony.

### A.    Standard of Review

When reviewing jury-charge error, we first determine if error actually exists in the jury charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Johnson v. State*, 227 S.W.3d 180, 182 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). If we find error, we then determine whether it harmed the appellant. *Ngo*, 175 S.W.3d at 743.

The degree of harm requiring reversal depends upon whether an objection was raised to the error at trial. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If appellant did not make a proper objection at trial, appellant "will obtain a reversal only if the error was so egregiously harmful that he has not had a

fair and impartial trial." *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

**B.   Analysis**

As we addressed in Appellant's third issue, a defendant cannot be convicted based on the testimony of a confidential informant unless that testimony is corroborated by other evidence tending to connect the defendant to the crime. CRIM. PROC. art. 38.141(a). Failing to instruct the jury on this requirement is error. *Simmons v. State*, 205 S.W.3d 65, 77 (Tex. App.—Fort Worth 2006, no pet.).

Next, we consider harm. Appellant acknowledges that there was no objection to the failure to include the confidential-informant-corroboration instruction. Accordingly, we review the record for egregious harm. *See Almanza*, 686 S.W.2d at 171. "Under the 'egregious harm standard,' the omission of a corroborating-evidence instruction may be rendered harmless if other evidence than the testimony of the accomplice witness or informant does exist that fulfills the purpose of the instruction." *Simmons*, 205 S.W.3d at 77. "[T]he omission of an [informant] witness instruction is generally harmless unless the corroborating . . . evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

As we held in Appellant's third issue, there is sufficient corroborating evidence to support the confidential informant's testimony. For the same reasons stated in the third issue, we do not find the corroborating evidence so unconvincing that it renders the State's overall case clearly and significantly less persuasive. *See id.* We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Publish. TEX. R. APP. P. 47.2(b).

18

at the Valero gas station parking lot located at 17514 SH 6, Manvel, Brazoria County, Texas. Sgt. Brawner advised Your Affiant that CI # 408 had negotiated the sell of one kilogram of cocaine with two males known to the CI as Fernando and Chano. Your Affiant and Sgt. Brawner met with the CI at a predetermined location. While meeting with the CI, the CI made a recorded phone call to Fernando who agreed to meet with the CI to purchase one kilogram of cocaine for $28,000.00 (twenty eight thousand dollars). The CI was and the CI's vehicle were searched and found to be void of any contraband, and was provided with an audio recording device. Your Affiant and Sgt. Brawner followed the CI to the Valero parking lot to meet Fernando and Chano. While on the way to the meet location the CI contacted Sgt. Brawner who was advised that the purchasers were now in the Burger King Parking lot located across the street from the Valero on SH 6 Manvel. A short time later Your Affiant then observed the CI pull into the Burger King Parking Lot and park. Your Affiant learned from Sgt. Brawner who was conducting surveillance in the Burger King Parking lot that the CI had walked inside Burger King. A short time later Sgt. Brawner observed the CI exit from inside Burger King and walk with 3 Hispanic males to a bluish green 2011 Honda CRV bearing TXLP DK3H056. Upon the CI walking away from the aforementioned CRV the CI signaled to the surveillance team that the negotiated currency was present in the CRV. As the CI departed the Burger King the CI was followed by the 3 suspects in the Honda CRV. Your Affiant, Sgt. Brawner and members of the Pearland Police Dept. Narcotics Unit followed the CI and the Honda CRV as they traveled to SH 288 southbound from SH 6. Investigator West was notified to conduct a traffic stop on the Honda CRV by Sgt. Brawner. Investigator West initiated a traffic stop on the Honda CRV at SH 288 south and County Road 56. Your Affiant was later notified by West that he had identified the occupants of the CRV as Fernando Renteria DOB 01/03/1982 rear seat passenger; Luciano Padilla DOB 06/19/1965 front seat passenger; and Juan Carlos Bernabe-Martinez DOB 01/16/1976 as the driver. Said individuals were detained and transported to the Brazoria County Sheriffs Office. Investigator Hoskins arrived at the location of the stop and assisted Investigator West with the search of the vehicle.

Your Affiant met with the CI and learned that the CI had met with the three aforementioned individuals in the Burger King. During the meet the CI confirmed with the three suspects that they intended to purchase one kilogram of cocaine. The CI further stated that in an earlier conversation with Renteria that Renteria told the CI that he was going to charge Padilla $1500.00 dollars for the cocaine as a brokerage fee which would be in addition to the agreed upon $28,000.00. The CI further stated that the suspects then went to their vehicle where the CI was speaking to Renteria and Padilla, Bernabe-Martinez at the Honda CRV, Bernabe-Martinez opened the glove compartment in the Honda CRV and told Padilla to show the CI the money. Padilla then showed the CI the single bundle of U.S. currency. The CI further stated at that time the CI told the suspects to follow him to travel to get the cocaine. Your Affiant received a signed sworn statement from the CI.

Upon searching the vehicle, Investigator Hoskins told Your Affiant that he found located underneath the passenger seat a clear plastic bag wrapped with gray duct tape containing bulk US currency. Your Affiant counted the U.S. Currency and found that the aforementioned bundle totaled $28,500.00. Further Bernabe-Martinez had $1308.00 for a grand total of 29,808.00.

Your Affiant found as a result of this investigation Fernando Renteria, Luciano Padilla, and Juan Carlos Bernabe-Martinez were in possession of said monies, which was to be used in the commission of a felony to wit: Illegal Investment/ Expenditure which is against the peace and dignity of the State.+

_Christina Renee Dingee_
NOTARY PUBLIC IN AND/FOR
BRAZORIA COUNTY, TEXAS.

"EXHIBIT B"

COPIA

CHRISTINA RENEE DINGEE
Notary Public
STATE OF TEXAS
Commission Exp. 11-22-2014

PG7

13Sep12 08:31      R E C E I P T      No: HOU RS-894258
  Sold By:                           Pick Up Date:    13Sep12
TRIPLE-S STEEL       CO.                  CUSTOMER COPY
6000 JENSEN DRi
HOUSTON, TEXAS  77026
Tel: 713-697-7105  Fax: 713-697-5945

  Sold To:   (65510)            Ship To:   ( 1        *Stefanie*
LUCIANO PADILLA              LUCIANDO PADILL
5710 COUNTRY RD #48         3710 CR 48
ROSHARON, TX  77583         ROSHARON, TX  77583

Trm GUARANTEE CHECKS THRU TELECHK  Pmt C Ord 13Sep12
Frt CUSTOMER IS HERE               Via                    FOB GT
Slp LYDIA MARTINEZ                 Tel 281-850-3399
=================================================================
                             SO No HOU RS-894258   IE No HOU IE-455016
-----------------------------------------------------------------
 1 ANGLE A-36                                  5 PCS        165 LBS
   2 X 2 X 1/8 X  0'                13Sep12                 100 FT
   >>>>>> LOCATI   3S55   <<<<<<
   MATERIAL                  5 PCS @    19.5400  EA           97.70
-----------------------------------------------------------------

                             Order Totals:    1 Items       165 LBS
***************************************************************
  Material   Processing    Freight      Other    Taxes   ORDER AMT
    97.70                                          8.07     105.77
***************************************************************
Taxes: TX1       6.11  TXHO      0.98  TXHOMT     0.98
                       MONEY                              105.77

CUSTOMER SIGNATURE: _____

Order was written under wrong Account.
Should have been account # 55506

Lydia Martinez
Sales Representative
713-696-4080 direct

LYDIA MARTINEZ
Sales Representative

6000 Jensen Drive
Houston, Texas 77026

Direct 713.696.4080
Main 713.697.7105
Fax 713.697.5945
Toll Free 800.231.1034
lydia.martinez@sss-steel.com

www.sss-steel.com

TRIPLE-S STEEL
SUPPLY, LLC.

A Subsidiary of Triple-S Steel Holdings, Inc.

"EXHIBIT C"